;VAGTS, Respondent, vs. UTMAN, Appellant.

*May 2—June 23, 1905.*

*Replevin: Evidence: Hearsay:* Res gestæ: *Trial: Objections and exceptions: Opinion evidence: Values: Witnesses: Competency: Impeachment.*

1. A witness who was present and heard the conversation which occurred when defendant gained possession of a horse which plaintiff claimed to have purchased from defendant, but which was in V.'s possession, was asked to state what he then heard said, and whether V. made any statements as to the horse being his. *Held,* that the questions called for mere hearsay evidence and were properly excluded.

2. In an action of replevin to recover a horse it appeared, among other things, that at the time the defendant gained possession of the horse from V., a third person who had the custody of the horse, the defendant had a mare which had been turned over to him for the purpose of selling and using the proceeds in payment of a debt due him for the horse. This mare he had placed in the custody of B., and he gave V. an order on B. for the mare. *Held,* that statements made by V. to B. when he presented the order and received the mare were hearsay and not part of the *res gestæ.*

3. Where a witness, in answer to a question as to what was the right value of a horse, $200 or $175, said "I don't know," and after the answer was given counsel said "I object," and the court said "The objection is overruled," even if the objection could be regarded as a motion to strike out the answer, the ruling as a denial thereof, and the denial error, such ruling is not harmful.

4. Evidence that a woman was accustomed to do business, carry on the responsibilities of a farm, act for herself in buying and selling horses, and agreed on the value of one purchased from defendant, sufficiently establishes her competency to testify on the question of the value of a horse.

5. Where defendant denied that he had employed an officer to go with him in connection with enforcing a certain chattel mortgage, evidence, stated in the opinion, is *held* competent as tending to impeach defendant.

APPEAL from a judgment of the circuit court for Barron county: A. J. VINJE, Circuit Judge. *Affirmed.*

Action to recover possession of a horse. The claim of the plaintiff was that she purchased the animal of the defendant, and owned and possessed the same at the time he regained possession thereof by the unauthorized action of her son John. The claim of the defendant was that he sold the horse to plaintiff's sons, John and George; that they owned and possessed the same when, by agreement, they returned the animal to him; that when he sold the horse it was upon condition that the purchasers should sign a note on account thereof, which they subsequently refused to do, whereupon he reclaimed the animal, and John Vagts, acting in the matter on the part of the purchasers, submitted thereto. The verdict and judgment were in plaintiff's favor, and the defendant appealed.

The cause was submitted for the appellant on the brief of *C. W. Meadows,* and for the respondent on that of *W. N. Fuller.*

MARSHALL, J. The errors assigned relate to rulings on evidence, which will hereafter be referred to in detail.

It was undisputed that appellant sold the horse and subsequently regained possession thereof through John Vagts, who assumed authority to act in the matter. He and his brother George were in immediate control of the animal, whether as owners or agents for respondent was a matter in controversy upon the trial. Frank Utman was present when appellant regained possession of the horse and heard the conversation which then occurred. As a witness for appellant he was asked to state what he then heard said, and whether John Vagts made any statements as to the horse being his, and the questions were ruled out. It is not claimed that the purpose of the questions was to make proof of any statements of John Vagts as agent for respondent under circumstances making the same binding upon her or to impeach him. The suggestion is that it was competent for appellant to defeat re-

spondent's claim of ownership by proving title in a third person and connecting appellant's possession therewith. True, such a defense was proper, but the rule in that regard does not permit the third person's title to be established by his own unsworn declarations. The questions' called for mere hearsay evidence and were properly excluded.

At the time appellant regained control of the horse he had possession of a mare, which had been turned over to him for the purpose, in part at least, to be sold and the proceeds used in payment of the debt due him for the horse. He had theretofore placed the mare in the custody of one Bishop. When he got the horse he gave John Vagts an order on Bishop for the mare. Vagts presented the order to Bishop and it was honored, at which time the two had some conversation, as appellant claimed, about John's relations with appellant as regards the animal in question. In respect to that this question was propounded to Bishop as a witness for appellant: "What statement did John Vagts make in regard to his accounts or *Mr. Utman,* at that time?" It does not definitely appear from the language used that the question called for anything which in any event bore on the controversy in suit. Assuming that the purpose was to obtain evidence of statements by Vagts tending to show that he was the owner of the subject of dispute, the interrogatory was improper, because it called for mere hearsay evidence. It is suggested that statements by Vagts at that time were competent evidence to prove that he was the owner of the horse under the rule that when the nature of one's possession of property is material to be established in a judicial proceeding, what he in good faith said in respect thereto characterizing the nature of such possession- is competent evidence as a part of the *res gestœ.* That, of course, could not apply to the conversation with Bishop, for the horse in suit had already been parted with, or at least Vagts was engaged in the transaction of parting with it. *Lampe v. Kennedy,* 60 Wis. 110,.

18 N. W. 730. The rule, in any event, only applies where the circumstances are such that the declarations can reasonably be regarded as involved in and a part of, so to speak, the act of possession itself—when it is in fact a part of the *res gestæ;* and when they are made under such circumstances as to fairly tend to establish the right of some matter in controversy. . They must be made in good faith and they must really characterize the nature of the act which is the matter in dispute. The rule is stated in the note to sec. 108, 1 Greenl. Evidence, thus:

"The declarations must have been made at the time of the act done, which they are supposed to characterize; and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction."

Obviously, under that doctrine statements made by John Vagts when the horse was delivered to the appellant did not tend to establish the nature of his possession as an evidentiary fact, or bear reasonably upon whether the sale of the horse was made to respondent or to her son. Under the circumstances, from any standpoint the proposed evidence can be viewed, it was the merest hearsay and properly excluded.

Complaint is made because evidence of the respondent was admitted as to the value of the horse, she not having shown herself competent to testify on the subject, but rather shown incompetency by stating that she did not know whether the horse was worth $175 or $200. The witness said: "This horse was worth $200 to $175, as near as possible. I don't know which would be right. I should pay $175 for the horse." We fail to find that the competency of the witness on the subject of value was raised by any proper objection. The witness, to the question as to what was the right value, $200 or $175, said: "I don't know." After the answer was given counsel for appellant said, "I object," and the court said, "The objection is overruled." If we were to regard

the objection as a motion to strike out the answer and the·
overruling of the objection as a denial thereof and the denial
error, it could not be regarded as harmful, but rather as bene-
ficial to appellant.    There was no objection to any other
question propounded to the witness on the subject of value.
Her evidence that the horse was worth $200 to $175, as near·
as possible, and that she would pay $175 for it stands unchal-
lenged, and in that situation was proper to go to the jury for
what it was worth.    It fairly indicated her judgment of the·
value, and the evidence that she was a woman accustomed to
do business, to carry the responsibilities of a farm, to act for·
herself in buying and selling horses, and that she claimed to
be the owner of the one in question and agreed upon the value·
thereof with appellant at the time she purchased the same,.
sufficiently established her competency.

There was evidence to the effect that appellant sold and de-
livered the horse to respondent in consideration of her as--
suming a debt thereon of $200, paying $20 in cash and agree-
ing to pay $30 additional in thirty days; that she at that
time owned the mare heretofore mentioned, subject to a $60
mortgage thereon to one Peterson; that after the maturity·
of the promise to pay the $30 appellant visited her for the
purpose of collecting the same, and also doing some business
respecting the mortgage on the mare, which mortgage was in·
the possession of John Doar, an officer, for enforcement; that
Doar accompanied appellant at the latter's request, and that
when they set out on the journey appellant had in his pos-
session the mortgage on the horse and asked the officer to go
with him as a matter of business.    Complaint is made be-
cause Doar, when on the stand as a witness for respondent,
was permitted to answer a question as regards what occurred˝
between him and appellant during the course of the journey;
and also a question as to what he was employed by appellant
to do.    The first question was, in the main, this: Did you
have two mortgages when you went out there?    To which.

witness replied: "I had one Mr. Peterson gave me, and I had another one that *Mr. Utman* gave me on the road going out there." The second question related to the answer and was this: "Did *Utman* get you to go out on the Peterson mortgage, or the one he gave you?" The purpose of the questions evidently was to show that appellant regarded re-spondent as the owner of the horse, and to impeach his evi-dence as regards whether he employed Mr. Doar to aid him in respect to the chattel mortgage on the animal as against her. He had testified, in effect, that he did not employ Mr. Doar to go with him in respect to that mortgage. The busi-ness which he actually did on the trip was conducted with the respondent. So far as it related to the horse it strongly indicated that he regarded her as owner. The evidence complained of seems to have been legitimate in that it tended to impeach appellant and in connection with other evidence, not necessary to be detailed, to show that he recognized re-spondent as the owner of the horse.

We are unable to find any merit in the appeal.

*By the Court.*—The judgment is affirmed.